## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE SHOPS AND GARAGE AT CANAL PLACE, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2271** |
| **WILSON CANAL PLACE II, LLC** | **SECTION: "G"(4)** |

### ORDER AND REASONS

Before the Court is Plaintiff, The Shops and Garage at Canal Place, LLC's ("Plaintiff") "Motion to Remand."[1] Defendant Wilson Canal Place II, LLC ("Defendant") opposes the motion.[2] Having considered the motion, the memoranda in support and in opposition, the arguments made during oral argument, the record, and the applicable law, the Court denies Plaintiff's motion to remand.

### I. Background

#### A.    *Factual Background*

This declaratory judgment action arises out of a dispute regarding the interpretation of a lease allegedly entered into by Plaintiff and Defendant on February 24, 2016, for a commercial parking garage in New Orleans, Louisiana ("Lease").[3] In the petition for declaratory judgment filed by Plaintiff, Plaintiff submits that it leases the commercial parking garage from Defendant pursuant to the terms of the Lease, which includes a provision for minimum payment in excess

---

[1] Rec. Doc. 9.

[2] Rec. Doc. 12.

[3] Rec. Doc. 1-2 at 1–2.

of $7 million per year ("Minimum Rent").[4] Plaintiff further submits that the "Interruption of Use" provision of the Lease "protects" Plaintiff from having to pay the Minimum Rent when an "unforeseen act of God or unforeseen cause beyond the reasonable control of [Plaintiff] interrupts or substantially impairs the use of the Leased Premises, allowing such Minimum Rent to abate until the day after the cause of the interruption or substantial impairment of use is removed."[5]

Plaintiff alleges that the COVID-19 pandemic has "substantially impaired" the commercial parking garage operations, leading to a 75% drop in gross transient revenue.[6] Plaintiff further alleges that it agreed with Defendant by letter dated April 9, 2020, ("April 2020 Letter") that the "Interruption of Use" provision was triggered, resulting in Plaintiff no longer paying Minimum Rent.[7] Yet Plaintiff avers that Defendant stated in a letter to Plaintiff dated June 18, 2020, that the "Interruption of Use" provisions "are no longer applicable and that [Plaintiff's] obligation to pay Minimum Rent resumed as of June 13, 2020."[8] Plaintiff counters that the COVID-19 pandemic and its effects are ongoing and therefore contests Defendant's alleged contention that the cause of the substantial impairment of use is removed.[9]

## B.    *Procedural Background*

Prior to the instant action, Plaintiff had filed suit against Defendant in the Civil District Court for the Parish of Orleans, State of Louisiana ("CDC") on March 22, 2020. The April 2020

---

[4] *Id.* at 2–3.

[5] *Id.* at 4 (internal quotations omitted).

[6] *Id.* at 3.

[7] *Id.* at 4–5.

[8] *Id.* at 5 (internal quotations and emphasis omitted).

[9] *Id.* at 5–6.

Letter states that "[w]ithin three (3) business days after the date of this settlement letter, [Plaintiff] shall file a motion to dismiss without prejudice the lawsuit filed by Plaintiff on March 22, 2020."[10] Thereafter, the first lawsuit was dismissed without prejudice.[11]

On July 17, 2020, Plaintiff filed a petition in the instant action for declaratory judgment in the CDC. In the petition, Plaintiff asserts that the parties "contractually agreed" that a declaratory judgment action arising out of a substantial impairment to the use of the leased premises resulting from the COVID-19 pandemic "shall have 'exclusive venue' in either the CDC or in the United States District Court for the Eastern District of Louisiana."[12] Plaintiff seeks a declaration that the abatement of Minimum Rent did not end on June 13, 2020, and that Plaintiff did not have to resume paying Minimum Rent as of June 13, 2020.[13] Plaintiff also seeks attorneys' fees, litigation expenses, expert fees, and court costs.[14] On August 14, 2020, Plaintiff filed an amended petition seeking additional declaratory relief.[15]

Defendant removed the action to this Court on August 14, 2020, pursuant to the federal diversity jurisdiction statute Title 28, United States Code, Section 1332.[16] In the notice of removal, Defendant represents that it is a limited liability company whose sole member is The State of Wisconsin Investment Board ("SWIB").[17]

---

[10] Rec. Doc. 9-4 at 2.

[11] The parties do not dispute that the first action was dismissed.

[12] Rec. Doc. 1-2 at 2.

[13] *Id.* at 8.

[14] *Id.*

[15] *Id.* at 16.

[16] Rec. Doc. 1.

[17] *Id.* at 2.

On September 13, 2020, Plaintiff filed the instant motion to remand this action to CDC.[18] Defendant filed an opposition to the motion on September 29, 2020.[19] With leave of Court, Plaintiff filed a reply brief in further support of the motion to remand on October 8, 2020.[20] On October 15, 2020, with leave of Court, Defendant filed a sur-reply in further opposition to the motion to remand.[21] The Court granted Plaintiff's request for oral argument on the instant motion to remand.[22] Oral argument was heard via videoconference on October 20, 2020.[23]

## II. Parties' Arguments

### A.     *Plaintiff's Motion to Remand*

Plaintiff makes three arguments in support of remand. First, Plaintiff argues that this Court should remand the case to state court because it "is a declaratory judgment action which raises novel issues under Louisiana law as to the length of adverse effects of the novel coronavirus. . . ."[24] In support, Plaintiff cites two non-binding cases in which federal district court judges in Pennsylvania declined to adjudicate declaratory judgment actions because of "novel, complex, and unsettled state law issues" implicated by COVID-19 related contractual disputes.[25]

Second, Plaintiff argues that the April 2020 Letter "confirms" that this matter should be

---

[18] Rec. Doc. 9.

[19] Rec. Doc. 17.

[20] Rec. Doc. 18.

[21] Rec. Doc. 19. The Court subsequently denied Plaintiff's motion for leave to file a sur-sur-reply brief, which was filed the day before oral argument in this matter. Rec. Doc. 23.

[22] Rec. Doc. 11.

[23] Rec. Doc. 16.

[24] Rec. Doc. 9-1 at 2.

[25] *Id*. at 12–15.

4

remanded to state court.[26] Specifically, Plaintiff contends that April 2020 Letter provides that "the sole and exclusive venue and jurisdiction for a declaratory judgment action . . . shall be the Civil District Court for the Parish of Orleans or the United States District Court for the Eastern District of Louisiana."[27] Accordingly, Plaintiff argues that once it instituted a declaratory judgment action against Defendant in state court, Defendant was barred from removing the action to federal court.[28] Additionally, Plaintiff argues that Defendant waived its right to removal because the April 2020 Letter "did not reserve any right to [Defendant] to remove an action filed in [the CDC], which was specifically identified as one of the two potential jurisdictions in which a declaratory judgment action could be initially filed, to federal court."[29] Moreover, Plaintiff argues that "any interpretation of the April 2020 Letter and surrounding issues should be decided by the Civil District Court for the Parish of Orleans as it was the March 2020 lawsuit filed in [the CDC] which prompted the letter in the first place."[30]

Third, Plaintiff claims that "[Defendant] has not met its burden to show the parties are diverse."[31] Specifically, Plaintiff asserts that Defendant is a limited liability corporation whose sole member is the State of Wisconsin Investment Board ("SWIB").[32] Plaintiff further asserts SWIB is a state-appointed board that invests for several Wisconsin public funds, including the

---

[26] *Id.* at 15.

[27] *Id.* at 15–16 (internal quotations omitted).

[28] *Id.* at 16.

[29] *Id.*

[30] *Id.* at 17.

[31] *Id.* at 17–23.

[32] *Id.* at 3.

Wisconsin Retirement System.[33] Plaintiff contends that "[n]umerous federal courts have held that state entities that invest in public retirement funds, such as SWIB . . ., are arms or alter egos of the State" and therefore are not citizens for purpose of diversity jurisdiction.[34] For these reasons, Plaintiff argues that the Court should remand this case to state court.

**B.   Defendant's Arguments in Opposition**

In opposition, Defendant argues as an initial matter that the seven factors set forth by the Fifth Circuit in *St. Paul Ins. Co. v. Trejo* establish that this Court should retain jurisdiction over this declaratory judgment action.[35] Defendant then contends that remand is inappropriate for three reasons.[36]

First, with respect to Plaintiff's assertion that remand is appropriate because of the novel state law issues surrounding COVID-19, Defendant counters that "this Court is well-suited to address" these contractual matters.[37] Defendant contends that "[t]here is nothing specific to Louisiana law that would render this Court incapable of hearing and deciding those issues," and that numerous federal district courts have "expressly rejected the idea that they are not equipped to render decisions relating to the COVID-19 pandemic and its effect on contractual relationships."[38]

Second, Defendant argues that it did not waive its right to remove this action.[39] Defendant

---

[33] *Id.* at 22.

[34] *Id.* at 18–24.

[35] *Id.* at 6–7; *see also* 39 F.3d 585, 590 (5th Cir. 1994).

[36] Rec. Doc. 12 at 1.

[37] *Id.* at 2.

[38] *Id.* at 7–8.

[39] *Id.* at 11.

contends that the April 2020 Letter designated jurisdiction in the "Civil District Court for the Parish of Orleans _or_ the United States District Court for the Eastern District of Louisiana."[40] Defendant further contends that Fifth Circuit precedent establishes that waiver of the right to removal must be explicit.[41]

Third, Defendant asserts that pursuant to the factors set forth by the Fifth Circuit in _Tradigrain, Inc. v. Mississippi State Port Auth._, SWIB is not an arm of the State of Wisconsin for purposes of this Court's jurisdictional analysis.[42] Defendant also points out that a Wisconsin state court and the United States Court of Appeals for the Fourth Circuit have held that SWIB is an independent agency, not an arm of the State of Wisconsin.[43] In addition, Defendant submits a declaration of SWIB's Chief Legal Counsel, Sara Chandler, in support of its assertion that SWIB is not an arm of the State of Wisconsin.[44] For these reasons, Defendant argues that this Court should deny the motion to remand.[45]

**C.    _Plaintiff's Arguments in Further Support of Remand_**

In reply to Defendant's opposition, Plaintiff makes four arguments in further support of the motion to remand. First, Plaintiff argues that Defendant's reliance on other federal district court cases in which a court maintained jurisdiction over cases involving COVID-19 related issues is misplaced because "the vast majority" of these cases are not "purely" declaratory

---

[40] _Id._ (emphasis in original).

[41] _Id._ at 12.

[42] _Id._ at 13; _see also_ 701 F.2d 1131 (5th Cir. 1983).

[43] Rec. Doc. 12 at 15.

[44] Rec. Doc. 12-1.

[45] Rec. Doc. 12 at 18.

judgment actions.[46] Second, Plaintiff relies on briefs filed by the Wisconsin State Attorney General in a case decided in Wisconsin state court to argue that SWIB is an arm of the state of Wisconsin for purposes of this Court's jurisdictional analysis.[47] Third, Plaintiff argues that the declaration of Sara Chandler does not dispute the "primary facts" relied upon by Plaintiff.[48] Finally, Plaintiff argues that "[a]t the very least," this Court "should allow [Plaintiff] to conduct jurisdictional discovery on SWIB."[49]

### D.    Defendant's Sur-Reply in Opposition to Remand

In the sur-reply brief, Defendant argues that Plaintiff "materially alters" and erroneously relies on briefs submitted by SWIB in *Bahr v. State Inv. Bd.*[50] Defendant also argues that Plaintiff "failed to disclose to the Court that, when *Bahr* was decided, the Wisconsin statute was phrased differently and placed more restrictions on SWIB's investment activities. Yet even under that version of the statute, the *Bahr* court decided that SWIB was an independent agency."[51] Defendant contends that the Wisconsin statute imposing restrictions on SWIB's investment authority was "critically revised in 2008 to grant SWIB even broader authority over its functions as an investment agency."[52]

---

[46] Rec. Doc. 18 at 2.

[47] *Id*. at 4–7.

[48] *Id*. at 7–9.

[49] *Id*. at 10.

[50] Rec. Doc. 22 at 1–2 (citing *Bahr v. State Inv. Bd.*, 186 Wis. 2d 379, 521 N.W.2d 152 (Ct. App. 1994)).

[51] *Id*. at 3.

[52] *Id*. at 2.

### III. Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute, which is not to be expanded by judicial decree."[53] "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant."[54] The removing party bears the burden of demonstrating that federal jurisdiction exists by a preponderance of the evidence.[55] Moreover, the removal statute must be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand."[56]

#### A.    *Subject Matter Jurisdiction Under 28 U.S.C. § 1332*

A defendant generally may remove a state court civil action to federal court when the federal court has original jurisdiction over the action.[57] A federal court has original jurisdiction over an action when the case "is between citizens of different states" and the amount in controversy "exceeds the sum or value of $75,000."[58] "[T]he party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper."[59] When determining whether diversity jurisdiction is present, a federal court considers "the claims in the state court petition as they existed at the time of removal."[60]

---

[53] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

[54] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)).

[55] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[56] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (internal citation omitted); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[57] 28 U.S.C. § 1441(a).

[58] 28 U.S.C. § 1332(a)(1).

[59] *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 397 (5th Cir. 2013).

[60] *Manguno*, 276 F.3d at 723.

A state is not a citizen of any state for purposes of diversity jurisdiction.[61] This rule also applies if a suit is brought against an agency that is the alter ego or arm of the state—federal jurisdiction is lacking.[62] However, if the agency is an independent one, separate and distinct from the state, the district court can properly assert jurisdiction over the case.[63]

**B.      Contractual Waiver of Right to Removal**

"For a contractual clause to prevent a party from exercising its right to removal, the clause must give a 'clear and unequivocal' waiver of that right."[64] The Fifth Circuit has held that there are three ways in which a party may clearly and unequivocally waive its removal rights: (1) by explicitly stating that it is doing so, (2) by allowing the other party the right to choose venue, or (3) by establishing an exclusive venue within the contract."[65]

**C.      Abstention Under the Declaratory Judgment Act**

The Declaratory Judgment Act, codified at 28 U.S.C. § 2201, provides:

> (a) In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[66]

The Declaratory Judgment Act "is an enabling act, which confers discretion on the courts rather

---

[61] *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).

[62] *PYCA Industries, Inc. v. Harrison County Waste Water Management*, 81 F.3d 1412, 1416 (5th Cir. 1996) (internal citations omitted).

[63] *Id.*

[64] *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004).

[65] *Id.*

[66] 28 U.S.C. § 2201.

than an absolute right on a litigant."[67] In evaluating whether to maintain jurisdiction over a declaratory judgment action, a federal district court must determine: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to [maintain jurisdiction over] the action."[68]

### III. Analysis

A.   *Whether the Court has Subject Matter Jurisdiction Under 28 U.S.C. § 1332*

In this case, Plaintiff argues that complete diversity is lacking because Defendant is an alter ego or arm of the state.[69] Defendant responds that it is an independent agency, not an arm of the State.[70] When determining whether diversity jurisdiction is present, the citizenship of a limited liability company is determined by the citizenship of each of its constituent members.[71] Because Defendant is a limited liability company, this Court must determine the citizenship of its sole member, SWIB.

"In determining whether the agency is an alter ego of the state or an independent agency, the essential question is whether the state is the real party in interest in the lawsuit."[72] To decide whether an agency is an alter ego of the state or an independent agency, this Court considers the following factors: "(1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of entity funding; (3) the degree of local autonomy; (4) whether the entity

---

[67] *Wilton v. Seven Falls, Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 34 U.S. 237 (1952).

[68] *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).

[69] Rec. Doc. 9-1 at 3, 18–24.

[70] Rec. Doc. 12 at 13–18.

[71] *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1078 (5th Cir. 2008).

[72] *Tradigrain*, 701 F.2d 113 at 1132.

is concerned primarily with local, as opposed to statewide problems; (5) the authority to sue and be sued in its own name; and (6) the right to hold and use property."[73]

The Court finds that the application of the *Tradigrain* factors to SWIB reveals that SWIB is not an arm of the state, but rather a citizen within the meaning of 28 U.S.C. § 1332. The Fifth Circuit has held that the first factor—whether state statutes and case law characterize the agency as an arm of the state—subsumes all others.[74] With respect to SWIB, in the analogous context of sovereign immunity,[75] the Wisconsin Court of Appeals reviewed the statutory underpinnings of SWIB to find that "[SWIB] not only is specifically authorized to sue and be sued in [its own] name, but the legislature has expressly stated its intent . . . that the board be an independent agency of the state . . . ."[76] Accordingly, the Wisconsin Court of Appeals held that SWIB is an agency with "independent proprietary powers and functions."[77] Plaintiff's attempts to rely on the briefing submitted in that case to distract from the Wisconsin court's central holding are unpersuasive.[78] In light of the Wisconsin Court of Appeals' determination that SWIB is an independent agency, not an arm of the state, the Court finds that the first *Tradigrain* factor weighs heavily in favor of construing SWIB as an independent agency.

Furthermore, the Court finds that the remaining *Tradigrain* factors also weigh in favor of the conclusion that SWIB is an independent agency. In an affidavit, Chief Legal Counsel for

---

[73] *PYCA*, 81 F.3d at 1416 (identifying and applying the *Tradigrain* factors).

[74] *Tradigrain*, 701 F.2d at 1132.

[75] *Id.* ("[T]he analysis of an agency's status is virtually identical whether the case involves determination of immunity under the Eleventh Amendment or a determination of citizenship for diversity jurisdiction.").

[76] *Bahr*, 186 Wis. 2d at 399 (internal citations and quotations omitted).

[77] *Id.* at 394.

[78] *See* Rec. Doc. 18 at 4–7.

SWIB, Sara Chandler, attested that "a judgment against SWIB related to one of its investments would not be paid out of the state treasury;" "SWIB manages its own budget, owns its own assets, and pays its investing and operating expenses from the trust funds under its management;" "SWIB has exclusive control over the investment and collection of the principal and interest of all moneys loaned or invested from the various funds it manages;" "SWIB is a body corporate with power to sue and be sued in its name;" and "SWIB holds and uses property."[79]

Although not binding upon this Court, the United States Court of Appeals for the Fourth Circuit's decision in *Roche v. Lincoln Property Co.* provides persuasive support for this conclusion. There, the Fourth Circuit analyzed the statutory contours of SWIB to hold that it "is not an arm of the State of Wisconsin and therefore is a citizen within the meaning of 28 U.S.C. § 1332."[80] Specifically, that court found that the Wisconsin legislature granted SWIB the authority to "(1) sue and be sued in its own name; (2) manage its assets; (3) pay its liabilities; (4) promulgate rules and regulations; and (5) formulate its investment policies."[81] For these reasons, the Court finds that SWIB is a Wisconsin citizen within the meaning of 28 U.S.C. § 1332.[82] Because Plaintiff is a citizen of Louisiana[83] and the amount in controversy exceeds $75,000,[84] the Court finds that it has federal subject matter jurisdiction over this action.

---

[79] Rec. Doc. 12-1.

[80] *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 601 (4th Cir. 2006).

[81] *Id.* (citing Wis. Stat. §§ 25.15, 25.17).

[82] The Court denies Plaintiff's request for jurisdictional discovery on this issue. *See* Rec. Doc. 18 at 10. Plaintiff has not shown that jurisdictional discovery is necessary to resolve this issue.

[83] Rec. Doc. 1-2 at 1.

[84] Rec. Doc. 1 at 3.

#### B.      *Whether Defendant Waived its Right to Remove the Action to this Court*

Plaintiff relies on the forum-selection clause in the April 2020 Letter to argue that this case should be remanded to the CDC.[85] The April 2020 Letter provides: "Landlord and Tenant agree that the Civil District Court for the Parish of Orleans or the United States District Court for the Eastern District of Louisiana shall be the sole and exclusive venue and jurisdiction for any action or proceeding described in this paragraph . . . ."[86]

Plaintiff argues that once it instituted a declaratory judgment action against Defendant in the CDC, Defendant was barred from removing the action to the Eastern District of Louisiana.[87] Additionally, Plaintiff argues that Defendant waived its right to removal because the April 2020 Letter "did not reserve any right to [Defendant] to remove an action filed in [the CDC], which was specifically identified as one of the two potential jurisdictions in which a declaratory judgment action could be initially filed, to federal court."[88] In opposition, Defendant argues that it did not waive its right to remove this action.[89]

At the outset, the Court finds that the plain language of the forum-selection clause makes clear that the parties did not agree to litigate exclusively in state court. Rather, by providing that "the Civil District Court for the Parish of Orleans *or* the United States District Court for the Eastern District of Louisiana shall be the sole and exclusive venue and jurisdiction" for this

---

[85] Rec. Doc. 9-1 at 16–17.

[86] Rec. Doc. 9-4 at 2.

[87] Rec. Doc. 9-1 at 16.

[88] *Id.*

[89] Rec. Doc. 12 at 11.

category of proceeding, the parties agreed that this Court is a proper forum for this action.[90] Furthermore, the April 2020 Letter does not specify that once a party files in one of the two proper forums, the other party is precluded from transferring the action to the other proper forum.[91] Plaintiff's attempt to distract from the plain language of the forum selection clause—and its complete silence as to issues of removal and remand—by arguing that the April 2020 Letter "did not reserve any right to [Defendant]" to remove this action is therefore unavailing.

Moreover, the Court finds that Defendant did not waive its right to removal. "For a contractual clause to prevent a party from exercising its right to removal, the clause must give a 'clear and unequivocal' waiver of that right."[92] The Fifth Circuit has held that there are three ways in which a party may clearly and unequivocally waive its removal rights: (1) by explicitly stating that it is doing so, (2) by allowing the other party the right to choose venue, or (3) by establishing an exclusive venue within the contract."[93]

In this case, the forum-selection clause did not provide a "clear and unequivocal" waiver of that right.[94] First, nowhere in the April 2020 Letter does Defendant explicitly state that it is waiving its right to remove the action to federal court.[95] Second, nothing in the state court record indicates that Defendant allowed Plaintiff the exclusive right to choose venue.[96] Third, as described above, the forum-selection clause does not provide that the CDC is the exclusive venue

---

[90] Rec. Doc. 9-4 at 2 (emphasis added).

[91] *See* Rec. Doc. 9-4.

[92] *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004).

[93] *Id.*

[94] *Id.*

[95] *See* Rec. Doc. 9-4.

[96] *See generally* Rec. Doc. 1-2, Rec. Doc. 9-4.

for this proceeding.[97] Accordingly, the Court finds that Defendant did not waive its right to remove this action to the Eastern District of Louisiana.

**C.      Whether the Court will Exercise its Discretion to Maintain Jurisdiction over this Declaratory Judgment Action**

Finally, Plaintiff argues that this Court should remand the case to state court because it "is a declaratory judgment action which raises novel issues under Louisiana law as to the length of adverse effects of the novel coronavirus. . . ."[98] Having found that this Court has subject matter jurisdiction over this action and Defendant did not waive its removal right, the Court turns to the question of whether to exercise its discretion to maintain jurisdiction over this judgment action.

In evaluating whether to maintain jurisdiction over a declaratory judgment action pursuant to 28 U.S.C. § 2201, a federal district court must determine: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to [maintain jurisdiction over] the action."[99] The Court examines each factor in turn.

**1.      Justiciability**

A declaratory judgment action is justiciable, or "ripe for adjudication only where an 'actual controversy' exists."[100] Generally, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal

---

[97] *See* Rec. Doc. 9-4 at 2.

[98] Rec. Doc. 9-1 at 2.

[99] *Sherwin-Williams*, 343 F.3d at 387 (citing *Orix Credit Alliance*, 212 F.3d at 895).

[100] *Orix Credit Alliance*, 212 F.3d at 895 (quoting 28 U.S.C. § 2201(a)).

interests."[101] A district court must address on a case-by-case basis whether the facts are sufficiently immediate to establish an actual controversy.[102]

In this case, the parties dispute the interpretation of a Lease provision relating to the abatement of Minimum Rent.[103] The Court finds that this represents an actual controversy between the parties and their dispute is sufficiently immediate. Thus, the Court concludes that this case is justiciable.

### 2.      Authority to Grant Relief

A district court lacks authority to consider the merits of a declaratory judgment action when: (1) the defendant in the declaratory judgment action previously filed a lawsuit in the state court; (2) the state court case involved the same issues as those in the federal court declaratory judgment action; and, (3) the district court is prohibited from enjoining the state proceeding under the Anti-Injunction Act, 28 U.S.C. 2283.[104] "The absence of any of the three factors defeats mandatory abstention, and the district court has broad discretion over whether to grant declaratory relief."[105]

Here, Defendant has not previously filed a lawsuit in state court.[106] As a result, the Court finds that mandatory abstention is not required, and the Court has authority to grant the requested relief.

---

[101] *Id.* (quoting *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)).

[102] *Id.*

[103] Rec. Doc. 1-2; Rec. Doc. 12 at 3.

[104] *Sherwin-Williams Co.*, 343 F.3d at 388 n.1.

[105] *Sealed v. Sealed*, 1994 WL 487245, at *2 (5th Cir. 1994) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)).

[106] The previous lawsuit initiated in the CDC on March 22, 2020, was filed by Plaintiff, not Defendant. Rec. Doc. 9-1 at 7.

### 3.       Exercising Discretion to Maintain Jurisdiction over this Declaratory Judgment Action

"[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."[107] Although the district court's discretion is broad, it is not unfettered and courts may not decline to maintain jurisdiction over an action "on the basis of whim or personal disinclination."[108] The Fifth Circuit has indicated that district courts should utilize the seven, nonexclusive *Trejo* factors in determining whether to maintain jurisdiction over a declaratory action.[109] The *Trejo* factors are as follows:

> (1)      whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[110]

The Court addresses each of the *Trejo* factors in turn.

### a.       Factor One: Pending State Action

At oral argument, counsel for Defendant stated that there is no pending action in state court. Plaintiff does not dispute that assertion. Notably, the Fifth Circuit has declared that "[t]he lack of a pending parallel state proceeding should not automatically require a district court to

---

[107] *Sealed v. Sealed*, 1994 WL 487245, at *2 (5th Cir. 1994) (citing *Torch*, 947 F.2d at 194).

[108] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).

[109] *Sherwin-Williams Co.*, 343 F.3d at 388.

[110] *Id.* (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)).

decide a declaratory judgment action."[111] However, the Fifth Circuit has also stated that "the presence or absence of a pending parallel state proceeding is an important factor," and "[t]he absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action."[112] Accordingly, the absence of a pending state action weighs in favor of retaining jurisdiction.

Despite the absence of a parallel state action, Plaintiff argues that a Louisiana state court is a more appropriate forum because Louisiana law is undeveloped with respect to COVID-19 related contractual issues.[113] In support, Plaintiff presents two non-binding decisions in which Pennsylvania district courts remanded declaratory actions regarding COVID-19 related contractual issues because they implicated unsettled state law issues.[114] In opposition, Defendant presents several non-binding decisions from other federal district courts denying remand of declaratory judgment actions that presented COVID-19 related contractual questions.[115] Additionally, Defendant cites fourteen cases involving COVID-19 related issues that were pending in the Eastern District of Louisiana on September 29, 2020.[116]

As an initial matter, the Court is not bound by the authority cited by either party as those cases were not decided by the Fifth Circuit or the United States Supreme Court. While Plaintiff may be correct that Louisiana law surrounding COVID-19 is relatively undeveloped, state law

---

[111] *Sherwin-Williams Co.*, 343 F.3d at 394.

[112] *Id.*

[113] Rec. Doc. 9-1 at 11.

[114] *Id.* at 12–13.

[115] Rec. Doc. 12 at 8–10.

[116] *Id.* at 10–11.

contractual issues are adjudicated by this Court on a regular basis and the existence of novel state law issues is not a hindrance to this Court exercising jurisdiction.[117] Moreover federal courts are regularly tasked with interpreting contractual agreements, and are no less capable than state courts of doing so with respect to factual scenarios arising out of the COVID-19 pandemic. A declaratory judgment in this case would simply clarify the legal obligations at issue by determining Defendant's obligations under the Lease; that judgment would not implicate state law issues in a way that is meaningfully different from any other diversity case.

Plaintiff has not argued, and the Court is not aware of, another state court action examining coverage under the same lease or lease provision at issue here. Accordingly, the Court finds that the comity and efficiency considerations presented by a parallel state court action are not present in this case and concludes that the first *Trejo* factor weighs strongly against remand.[118]

> b.   *Factors Two, Three, and Four: Fairness and Improper Forum Shopping*

The second, third, and fourth *Trejo* factors require the Court to consider the motivations of the party seeking declaratory judgment in federal court, "analyzing whether the [party] is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds."[119] The Court examines "whether the declaratory judgment [party] filed suit 'in anticipation' of a lawsuit to be filed by the [other party]; whether the [party] engaged in 'forum shopping' in bringing the declaratory judgment action; and whether possible inequities exist in allowing the declaratory judgment [party] to gain precedence in time or to change forums…"[120]

---

[117] *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991) (stating that the Erie doctrine requires federal courts sitting in diversity to apply state substantive law).

[118] *See Sherwin-Williams Co.*, 343 F.3d at 394.

[119] *Id*. at 391–92.

[120] *Id*.

The instant declaratory judgment action was filed in state court by Plaintiff and removed by Defendant.[121] Accordingly, the Court must consider Defendant's motivations in removing the action to federal court.

With respect to the second factor, Defendant contends that "this declaratory action was not filed to preempt a lawsuit by another party."[122] The April 2020 Letter specifies that in the event that the parties are unable to agree on when Minimum Rent payments are to resume, "either party shall have the right to file suit for declaratory judgment."[123] Therefore, Plaintiff's filing of the suit was proper. Further, because Defendant was not the party who initiated the action, Defendant did not use declaratory judgment as an anticipatory tactic.[124] Thus, the Court finds that this factor weighs against remand.

Considering the third factor, concerns about forum-shopping arise when there is evidence a party seeks the forum for its more favorable law.[125] Here, Defendant removed the action to federal court under diversity jurisdiction. The Fifth Circuit has explicitly recognized that a traditional justification for diversity jurisdiction is "to protect out-of-state defendants."[126] Removal of a case by an out-of-state defendant "does not necessarily demonstrate impermissible forum selection."[127] Moreover, as discussed above, the parties agreed in the April 2020 Letter

---

[121] *See* Rec. Doc. 1.

[122] Rec. Doc. 12 at 7.

[123] Rec. Doc. 9-4 at 2.

[124] Rec. Doc. 17 at 7.

[125] *Sherwin-Williams*, 343 F.3d at 399.

[126] *Id.*

[127] *Id.*

that venue and jurisdiction would be proper in the Eastern District of Louisiana.[128] Accordingly, there is no forum shopping present, and the Court finds that this factor weighs against remand.

The fourth factor examines whether retaining the action would allow Defendant to gain precedence in time or a change of forums.[129] Neither party asserts that there is an inequity regarding timing, and it does not appear that there is any pending state proceeding. Therefore, there is no potential for one party to gain an advantage of precedence in time. Defendant argues that no inequity arises from a change of forum, and Plaintiff likewise does not present this contention. Plaintiff's opposition lies in its argument that Louisiana courts are a more appropriate forum for deciding new issues of state law.[130] As discussed above, federal courts are capable of deciding issues of state law without inequity to either party. In fact, the traditional rationale for diversity jurisdiction is that it can protect out-of-state defendants.[131] Accordingly, no inequity arises from the removal of the declaratory judgment action and this factor weighs against remand.

Based on the foregoing analysis, the Court finds that the three fairness factors all weigh against remand.

       c.    *Factor Five: Convenient Forum*

The state action was filed in the Civil District Court for the Parish of Orleans, State of Louisiana.[132] As the state court and this Court are in the same city, this Court is equally convenient

---

[128] *See* Rec. Doc. 9-4 at 2.

[129] *Sherwin-Williams*, 343 F.3d at 391–92.

[130] Rec. Doc. 9-1 at 11.

[131] *Sherwin Williams,* 343 F.3d at 399 ("[The selection of a federal forum] does not necessarily demonstrate impermissible forum selection when the declaratory judgment out-of-state plaintiff invokes diversity. Rather, it states the traditional justification for diversity jurisdiction, to protect out-of-state defendants.").

[132] Rec. Doc. 9-1.

for the parties. Therefore, this factor is neutral.

        *d.*      *Factor Six: Judicial Economy*

Defendant asserts that maintaining the lawsuit in federal court would serve the purposes of judicial economy.[133] The record reflects that this action was filed on July 17, 2020, and is still in its infancy.[134] Additionally, this Court has hitherto decided no issues in this case.[135] Accordingly, either state or federal court could efficiently decide the declaratory action. This factor is also neutral.

        *e.*      *Factor Seven: Construction of a State Judicial Decree*

There is no state judicial decree at issue between the parties and no pending parallel suit. Therefore, this factor weighs against remand.

For the reasons discussed above, five factors weigh against remand and two factors are neutral. Considering these factors together, the Court exercises its discretion to maintain jurisdiction over this declaratory judgment action.

## V. Conclusion

Considering the foregoing reasons, the Court finds that removal is proper, and the Court will exercise its discretion to maintain jurisdiction over this declaratory judgment action. Accordingly,

---

[133] Rec. Doc. 12 at 7.

[134] Rec. Doc. 1-2 at 1.

[135] The only pending motion is Defendant's motion to dismiss a second-filed duplicate action. Rec. Doc. 7.

**IT IS HEREBY ORDERED** that Plaintiff The Shops and Garage at Canal Place, LLC's "Motion to Remand"[136] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this <u>21st</u> day of October, 2020.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[136] Rec. Doc. 9.